UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ADIL KHALIL,

                                Plaintiff,            **REPORT AND**

    -against-                               **RECOMMENDATION**

PRATT INSTITUTE,                      16-CV-6731 (JFB)(SIL)

                            Defendant.
------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court, on referral from Honorable Joseph F. Bianco for Report and Recommendation, is Defendant Pratt Institute's ("Pratt" or "Defendant") motion to dismiss *pro se* Plaintiff Adil Khalil's ("Khalil" or "Plaintiff") Second Amended Complaint (the "SAC"). *See* Motion to Dismiss, Docket Entry ("DE") [45]; *see also* SAC, DE [41]. By way of Complaint filed November 29, 2016, and amended on May 22, 2017 and April 2, 2018, Khalil brings this action alleging, *inter alia*, violations of his civil rights under: (i) 42 U.S.C. § 1983; (ii) Section 504 of the Rehabilitation Act of 1973 ("Section 504" or the "Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*; and (iii) Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.*, as well as certain state law claims.[1] *See* SAC. For the reasons set forth below, the Court respectfully recommends that Pratt's motion be granted in its entirety and that the SAC be dismissed without prejudice.

---

[1] Plaintiff also initially alleged violations of: (i) the Family Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232(g); and (ii) the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq. See* First Amended Complaint, DE [17]. On February 2, 2018, however, Khalil's FERPA and IDEA claims were dismissed with prejudice. *See* Section I(B), *infra*.

# I.    Background

## A.    <u>Statement of Relevant Facts</u>

The following facts are taken from the Second Amended Complaint and its exhibits, and are presumed true for purposes of Pratt's motion.[2]

This case arises out of Pratt's decision to administratively withdraw Khalil from his undergraduate course of architectural study on December 21, 2010 and the denial of his request for reinstatement on August 29, 2011. *See* SAC ¶ 5. Plaintiff complains that Defendant "refused to accept the student's [unidentified] accommodation for an injury" when he was informed by Pratt that he was being placed on administrative leave because he was failing classes and scaring the students and faculty. *See* SAC ¶ 21. As a result, Khalil alleges that he was denied a reasonable accommodation for his purported disability, blurred vision and iritis, and also suffered discrimination and retaliation based on his race and perceived religion as a "Pakistani Muslim/Moslem." *See e.g.*, *id.* ¶¶ 5, 9, 14, 17, 31, 100.

On December 21, 2010, by way of letter, Plaintiff was informed that he was administratively withdrawn from Defendant's School of Architecture due to his inability to meet his responsibilities as a student and to cease further disruptive behavior. *See* December 21, 2010 Letter ("Withdrawal Letter"), SAC, Ex. 6.

---

[2] The majority of the SAC is comprised of assorted legal standards and scattered factual allegations. In an attempt to piece together relevant facts, the Court also considers the documents attached to the SAC. *See Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561 (1992) ("[A] complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

According to Pratt's Involuntary Administrative Withdrawal Policy, a student will be subject to administrative withdrawal when:

> In the judgment of the Vice President for Student Affairs, there is a substantial and significant possibility the student, as a result of a physical or psychological condition: (1) will harm him/herself or others; (2) will cause significant property damage; (3) will be substantially unable to meet his or her responsibilities as a student; (4) will be unable to care for his or her daily physical needs without assistance and has failed to secure such assistance; (5) will directly impede the lawful activities of others; [and/or ](6) will directly and substantially interfere with the Institute's normal operations.

Pratt's Involuntary Administrative Withdrawal Policy, SAC, Ex. 2 at 2. In support of Defendant's decision, the Withdrawal Letter cites Khalil's "[e]rratic, confused, aggressive, and sometimes incoherent behavior at [his] thesis presentation on [December 14, 2010]," as well as similar behavior in other classes and repeated prior absences. *See* Withdrawal Letter. In the Withdrawal letter, Pratt also sets forth various prerequisites for academic reinstatement, including requests for additional documentation of Plaintiff's alleged medical condition and his psychological treatment. *See id.* On August 29, 2011, Khalil's request for reinstatement was denied due to, *inter alia*, his alleged failure to satisfy those requirements. *See* Denial of Request for Reinstatement Letter ("Denial Letter"), SAC, Ex. 30.

As proof of his disability, Khalil refers to a November 3, 2010 letter from an ophthalmologist which diagnosed him with "blurred vision and iritis (inflammatory eye condition) [that] preclude[d] him from driving or reading for a few days." *See* SAC ¶ 21; *see also* Ophthalmologist Letter, SAC, Ex. 14. As evidence of his request for an accommodation for his purported medical condition, Plaintiff submits

3

a November 7, 2010 email from his thesis advisor, Professor Ran Oran ("Oran"). *See* Oran Email, SAC, Ex. 7. In that email, after learning of Khalil's iritis and blurred vision, Oran suggested that Plaintiff concentrate on his recovery and not to worry about class or future presentations. *See id.* Khalil also alleges that Oran assigned him a "suicide bomber" project to discriminate against him as "the only brown male Pakistani Moslem/Muslim student." *See* SAC ¶ 5; *see also* Rebuttal to the Defendant's Motion to Dismiss the SAC ("Pl.'s Opp.") at 15.

Khalil reported Oran's allegedly discriminatory conduct to Pratt's administration. Specifically, on November 29, 2010, during a crisis and consultation meeting with staff psychologist Ariela Reder ("Reder"), Plaintiff reported that Oran changed "his research topic several times[, which] result[ed] in [Khalil] falling behind the rest of the class." *See* SAC ¶ 5; Crisis and Consultation Note, SAC, Ex. 8. During a December 13, 2010 meeting with Reder, Khalil once again complained of Oran's discriminatory conduct, this time protesting a lack of feedback regarding Khalil's previously submitted academic paper. *See* SAC ¶ 5; Ex. 9. Finally, Plaintiff alleges that his initial symptoms regarding blurred vision and iritis resulted in an ultimate diagnosis of the inflammatory disease sarcoidosis – which impairs the functioning of his lungs, spleen, kidney, liver, and eye – on November 18, 2016, almost six years after his administrative withdrawal from Pratt. *See* SAC ¶ 5; Ex. 33. Khalil's sarcoidosis also appears to have led to additional conditions, including uveitic glaucoma. *See* SAC ¶ 84; Ex. 48.

## B.    **Procedural History**

Based on the above, Khalil filed his Complaint and First Amended Complaint (the "FAC") on November 29, 2016 and May 22, 2017, respectively. *See* DEs [1], [17]. The FAC alleged: (i) violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution made pursuant to 42 U.S.C. § 1983; (ii) discrimination and retaliation claims made pursuant to the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*; (iii) discrimination and retaliation claims made pursuant to Title VI, 42 U.S.C. § 2000d *et seq.*; (iv) violations of FERPA, 20 U.S.C. § 1232(g); (v) denial of due process rights under IDEA, 20 U.S.C. § 1400 *et seq.*; and (vi) state law claims of "tort, defamation, libel, and negligence." *See generally* FAC. On July 10, 2017, Defendant moved to dismiss the FAC. *See* DE [24]. Adopting this Court's Report and Recommendation, *see* DE [32], Judge Bianco dismissed the FAC without prejudice as to all claims other than those brought under IDEA and FERPA, which were dismissed with prejudice. *See* DE [37]. Khalil was also granted leave to file a Second Amended Complaint. *See id.* Accordingly, Plaintiff filed the Second Amended Complaint on April 2, 2018. *See* SAC.

The SAC again alleges: (i) violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution made pursuant to 42 U.S.C. § 1983; (ii) discrimination and retaliation claims made pursuant to the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*; (iii) discrimination and retaliation claims under Title VI, 42 U.S.C. § 2000d *et seq.*; and (vi) state law claims of "tort, defamation, libel, and negligence." *See generally* SAC. On May 21, 2018,

5

Pratt moved to dismiss the Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), *see* DE [45], and Judge Bianco referred that motion to this Court for Report and Recommendation. *See* DE [54].

## II.      Legal Standard for a Motion to Dismiss

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  However, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the SAC as true and draw all reasonable inferences in favor of Plaintiff. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). Where, as here, a Complaint is filed by a *pro se* litigant, the Court must also be careful to "interpret the complaint liberally to raise the strongest claims that the allegations suggest." *Rosen v. N. Shore Tower Apartments, Inc.*, 11-cv-00752, 2011 WL 2550733, at *2 (E.D.N.Y. June 27, 2011) (citing *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.

6

2000)).  Notwithstanding, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal.  *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted).  In deciding a motion to dismiss, the Court may consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y. 2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference").

## III.  Discussion

Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends that Defendant's motion to dismiss the Second Amended Complaint be granted in its entirety because Plaintiff's federal claims are untimely and fail on the merits pursuant to Fed. R. Civ. P. 12(b)(6).  Because the claims are beyond the applicable limitations period, the Court does not address the viability of each cause of action element by element.  Rather, the Court initially

considers the timeliness of Khalil's federal claims and subsequently addresses each statute as appropriate.[3]

## A.     Timeliness

The SAC's 42 U.S.C. § 1983, Section 504, and Title VI, claims should be dismissed because they are untimely, and Plaintiff fails to demonstrate a basis for tolling the respective statutes of limitations under the doctrine of equitable estoppel or NY CPLR § 208.  Khalil's federal causes of action are each governed by a three-year statute of limitations period which began to accrue when he knew or had reason to know of the injury which forms the basis of this action.  *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (Section 1983); *Stropkay v. Garden City Union Free Sch. Dist.*, 593 F. App'x 37, 41 (2d Cir. 2014) (Section 504); *Martin v. State Univ. of New York*, 704 F. Supp. 2d 202, 234 (E.D.N.Y. 2010) (Title VI).  Here, Plaintiff's claims arise out of his administrative withdrawal that occurred on December 21, 2010 and subsequent denial for academic reinstatement that occurred on August 29, 2011. Therefore, to the extent that Plaintiff knew or had reason to know of his injury, his three-year period began to run, at the latest, on August 29, 2011, and ended on August 29, 2014.  Khalil, however, did not initiate this action until November 29, 2016, and thus his claims are time-barred.

---

[3] The Court notes that Khalil references numerous irrelevant and incongruous legal arguments throughout his SAC and opposition to Pratt's motion.  For example, Plaintiff discusses legal authority on false arrest in connection with an apparent 2014 detention, *see* Pl.'s Opp. at 10-12, claims statutes of limitations should be tolled pursuant to a penal law concerning criminal culpability for the mentally incapacitated, *see id.* at 7, and cites to a plethora of misplaced case law. *See generally* SAC.  In the interests of brevity and practicality, the Court declines to address every potential argument mentioned by Khalil, and instead focuses solely on those relevant to the instant motion.

Plaintiff, however, continues to argue, as he did in opposition to the motion to dismiss his First Amended Complaint, that he first became aware of his injury and the limitations period commenced on January 13, 2018, when he was specifically diagnosed with uveitic glaucoma stemming from his sarcoidosis. *See e.g.*, SAC ¶ 84; Pl.'s Opp. at 4-5.[4] Khalil's argument misses the mark for two reasons. First, the alleged injurious act for which Plaintiff seeks relief is not his underlying purported medical condition, but rather his administrative withdrawal and subsequent denial for academic reinstatement. *See generally* SAC (setting forth various claims based upon Pratt's decision to place Khalil on an administrative withdrawal and subsequently denying him reinstatement). Second, assuming *arguendo* that Plaintiff's medical condition does serve as the basis for his claim, he was, by his own admission, aware of symptoms of this condition in 2010, and therefore, the limitations period started to run at that time regardless of when he received a formal diagnosis. *See id.* ¶ 5. Accordingly, because the Complaint was filed more than five years after Khalil's reinstatement request was denied and nearly six years after he became aware of his medical condition, Plaintiff's Title VI, Section 504, and 42 U.S.C. § 1983 claims are untimely.

### i.    Equitable Estoppel

Khalil contends that the various statutes of limitations should be tolled under the doctrine of equitable estoppel. *See* SAC ¶¶ 83-91; Pl.'s Opp. at 4-5, 14-15. "The

---

[4] The Court notes that Plaintiff's First Amended Complaint alleged the claims arose on November 18, 2016, when he was diagnosed with sarcoidosis. Khalil now argues that a subsequent diagnosis triggered his statute of limitations. In any event, this is a distinction without a difference for the purpose of the analysis.

doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense . . . [such as] where a plaintiff is induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Good Luck Prod. Co. v. Crystal Cove Seafood Corp.*, 60 F. Supp. 3d 365, 373 (E.D.N.Y. 2014) (quoting *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (internal quotation and citations omitted)). "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 2d 404, 416 (E.D.N.Y. 2006) (internal quotation and citation omitted). "Typically, the doctrine is invoked in cases in which [a defendant] has made misrepresentations concerning the statute of limitations or lulled the plaintiff into believing that it was not necessary for him to commence litigation." *Id.* (internal quotation and citation omitted).

Khalil's equitable estoppel argument fails as the Second Amended Complaint remains devoid of any factual allegations of fraud, misrepresentation, or deception on the part of Pratt that prevented the timely commencement of the instant action. Plaintiff argues in conclusory fashion that he was "induced by fraud, misrepresentation or deception to refrain from filing a timely action." *See* Pl.'s Opp. at 14. Khalil, however, provides no factual support for this assertion and instead claims that Pratt "concealed documents so as to refrain [*sic*] the plaintiff from brining a timely action...." *Id.* These allegedly withheld documents include Khalil's

"complete academic record." *Id*. Any contention that Defendant withheld academic records, even if deemed true, however, is irrelevant to an equitable estoppel argument as it has no bearing on Plaintiff's ability to commence suit in the context presented here. Instead, as set forth above, it is undisputed that since 2010, Khalil had knowledge of the requisite facts underlying his claims. *See* SAC ¶ 5. Plaintiff, therefore, has failed to demonstrate that he was prevented in "some extraordinary way" from timely exercising his rights in a civil action. *See Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002). As a result, Khalil is unable to invoke the doctrine of equitable estoppel as a means of tolling the applicable statutes of limitations.[5]

ii.    NY CPLR § 208

Khalil also claims he is entitled to reprieve from his untimely commencement of this action under New York law, which tolls statutes of limitations, *inter alia*, if a cause of action accrues while an individual is disabled because of insanity. *See* NY CPLR § 208. Insanity under this tolling provision is construed narrowly, however, and can only be invoked with respect to "those individuals who are unable to protect their legal rights because of an over-all inability to function in society." *La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 99 (2d Cir. 2014) (quoting *McCarthy v. Volkswagen of Am., Inc.*, 55 N.Y.2d 543, 548, 450 N.Y.S.2d 457, 460 (1982)). Moreover, "the statute speaks in terms of insanity, not merely mental illness." *Id*.

---

[5] Plaintiff further alleges that he is entitled to tolling due to the actions of James Lebow, Khalil's purported former counsel, and FBI Special Agent Steve Byrnes. *See* SAC ¶ 91; Pl.'s Opp. 14-15. However, neither of these individuals are Defendants in this action, and so this argument is rejected.

(internal quotation and citations omitted).  Accordingly, "courts have refused to apply tolling 'where a plaintiff has evidenced an ability to pursue his or her legal rights during the relevant period." *Perez v. New York City Police Dep't*, No. 16-cv-6401, 2017 WL 635493, at *2 (E.D.N.Y. Feb. 15, 2017) (quoting *Tsai v. Rockefeller Univ.*, No. 00-cv-329, 2002 WL 237843, at *5 (S.D.N.Y. Feb. 15, 2002), *aff'd sub nom.*, 46 F. App'x 657 (2d Cir. 2002)).

Here, Plaintiff's reliance on Section 208 is misplaced for several reasons.  First, the disability that Khalil alleges apparently led to both his administrative withdrawal from Pratt and subsequent inability to commence suit appears to be physical in nature rather than mental.  *See e.g.*, SAC ¶ 8 (alleging Plaintiff was diagnosed with the "autoimmune disease sarcoidosis").  Second, assuming *arguendo* that "Plaintiff suffers from Sarcoidosis the mental illness," *see* Pl.'s Opp. at 6, this would not rise to the statute's requirement that Khalil be *insane* to the extent he could not protect his legal rights because of a complete inability to function in society, as evidenced by his continuous pursuit of relief in various judicial and quasi-judicial forums over the past several years.  *See e.g.*, SAC ¶¶ 6, 7, 54, 99 (alleging, *inter alia*, that Plaintiff:  (i) requested his academic records on multiple occasions; (ii) retained an attorney and filed a grievance against that attorney; and (iii) complained of Pratt's alleged discrimination to the United States Department of Education Office of Civil Rights).  Moreover, the SAC does not allege that any purported disability rendering Plaintiff insane ever *ceased* such that the statute would be triggered, and indeed implies any such condition remains in effect. *See* Pl.'s Opp. at 6 (discussing the mental

conditions Khalil claims to still be suffering from); *see also* NY CPLR § 208. Thus, Plaintiff's initiation of the instant action notwithstanding his supposed ongoing disabilities further establishes his ability to pursue legal rights. Accordingly, the Court concludes that Khalil's claims are untimely and not subject to any tolling doctrines. However, in light of Khalid's *pro se* status, the Court respectfully recommends that Pratt's motion to dismiss be granted without prejudice to allow Plaintiff one final opportunity to amend his Complaint to include allegations that would justify tolling.

### B.    The Merits of Plaintiff's Claims

The untimeliness of this action is a threshold reason to dismiss Khalil's SAC. For the sake of completeness, however, the Court considers the substance of Plaintiff's claims. As discussed below, each cause of action is without merit.

#### i.    42 U.S.C. § 1983

Initially, Plaintiff's Section 1983 claim fails because the SAC remains devoid of any plausible allegations that Pratt acted "under the color of state law." Upon a favorable reading, the SAC asserts violations under both the Equal Protection and Due Process Clauses of the United States Constitution, each of which require conduct by a state actor. *See e.g.*, SAC ¶¶ 2, 4, 9, 11, 16, 17, 21 90.

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate:  "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see also Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (to state a claim under Section 1983 for a violation of constitutional rights, a plaintiff must allege that he was injured by a state actor or by a private party acting under color of state law).

Whether a private party is acting under color of state law depends on whether the defendant exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043 (1941); *see also Kia P. v. McIntyre*, 235 F.3d 749, 755-56 (2d Cir. 2000) (internal citations omitted).  "[C]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Perez v. Sugarman*, 499 F.2d 761, 764–65 (2d Cir. 1974) (quoting *Evans v. Newton*, 382 U.S. 296, 299, 86 S.Ct. 486, 489 (1966)).  Regarding private educational institutions, a plaintiff must allege either that the state has ceded governmental functions to the private actor that the state would otherwise be obligated to perform, *see Kia P.*, 235 F.3d at 757 (citations omitted), or

that the state has effectively assumed control of the private institution's policies and operations, *see Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 400, 115 S.Ct. 961, 975 (1995).

Here, Pratt is a private entity and the Second Amended Complaint does not allege that New York State or any other state or municipal actor *effectively controlled the policies or practices at issue* sufficient to convert Defendant's alleged misconduct into state action. Plaintiff's allegation that various lecturers and professors worked for the New York City Buildings Department, *see e.g.* SAC ¶¶ 38-40, is without merit as there is no contention that these individuals' positions with municipal entities bore any relation to their teaching positions at Pratt or that these instructors controlled Defendant's policies or practices. Further, Khalil's claim that Defendant is a state actor because the state controls the issuance of diplomas, *see id*. ¶¶ 35, 45, misses the mark even if taken as true, both because there is no allegation that any of the conduct complained of is connected to Pratt's issuance of diplomas, and since it is not claimed that the State would otherwise be obligated to issue diplomas in the absence of private institutions. In other words, a private institution does not become a state actor by virtue of being bound by criteria for issuing diplomas. Accordingly, Khalil's Section 1983 claim also fails on its merits and should be dismissed.

ii.    Section 504 of the Rehabilitation Act of 1973

Plaintiff's Section 504 discrimination and retaliation claims are similarly untenable. The Rehabilitation Act protects the rights of disabled individuals to participate in state-administered or funded services. *See Davis v. Shah*, 821 F.3d

231, 259 (2d Cir. 2016). Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

To state a *prima facie* discrimination claim pursuant to Section 504, a plaintiff must establish that: "(1) he is a qualified individual with a disability; (2) he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) such exclusion or discrimination was due to [his] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation and alterations omitted). In order to sustain a retaliation claim under Section 504, the following elements must be alleged: "(i) plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (internal citations omitted).

A request for a reasonable accommodation constitutes a protected activity under Section 504. *See Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999) (retaliation claim can be based on, *inter alia*, a request for a reasonable accommodation). "[A] defendant is not liable for failure to provide a reasonable accommodation . . . if the plaintiff does not ask for an accommodation, or fails to provide information necessary to assess the request for an accommodation." *Grabin v. Marymount Manhattan Coll.*,

No. 12 Civ. 3591, 2014 WL 2592416, at *14 (S.D.N.Y. June 10, 2014).    An accommodation request under the Rehabilitation Act "contemplate[s] an ongoing, informal, and interactive process that 'should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'"  *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 539–40 (S.D.N.Y. 2014) (quoting 29 C.F.R. § 1630.2 as a regulation issued pursuant to the ADA but finding it informative to resolution of claims under the Rehabilitation Act).  These principles indicate that "[w]hat matters under the . . . [Rehabilitation Act] are not formalisms about the manner of the request, but whether the [requestor or his representative] provides the [requestee] with enough information that, under the circumstances, the [requestee] can be fairly said to know of both the disability and desire for an accommodation."  *Id.* (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)).

Here, the Second Amended Complaint fails to plausibly allege any discrimination due to a disability, and is once again silent as to any request for an accommodation or whether Plaintiff provided information necessary to assess any such request.  Khalil asserts that his proposed accommodation took the form of, *inter alia*, excused lateness for future classes due to his blurred vision and iritis, wearing sunglasses indoors, and using a computer.  *See* SAC ¶¶ 21, 92, 93.  He further alleges that Defendant failed to provide such an accommodation when he received a failing grade in various classes "based on his absents [*sic*]."  *See id.*  However, the SAC fails to reference any communication that could be reasonably understood to constitute a

request for these or other reasonable accommodations.  Instead, Khalil relies on a medical note indicating that his blurred vision and iritis precluded him from driving or reading for a few days.  *See* Ophthalmologist Letter.  Plaintiff also cites Oran's November 7, 2010 email, which suggested that he concentrate his efforts on his medical recovery and not to worry about his class or future presentations, as evidence of a request to accommodate.  *See* SAC ¶¶ 5, 19; Oran Email.  The foregoing, however, fails to articulate any facts that can reasonably construed as a request for an accommodation. The Ophthalmologist Letter also neglects to provide information necessary to assess a request for accommodation as it is silent as to any course of treatment, duration of the condition, prescribed medication, or other restrictions.  As a result, even construed in the light most favorable to Khalil, the Second Amended Complaint again fails to allege a request for an accommodation or that Pratt was provided sufficient information to assess such request.  Accordingly, Plaintiff's Section 504 cause of action fails as a matter of law and should be dismissed.

      iii.    <u>Title VI</u>

Finally, Khalil's Title VI claim is also fatally deficient.  Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  This statute prohibits federal funding from going to any person, organization, or government agency that discriminates based on race, color, or national origin.  *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*,

702 F. Supp. 2d 122, 133 (E.D.N.Y. 2010). To state a claim for discrimination under Title VI, the plaintiff must allege that: (1) the defendant discriminated against him on the basis of race, color, or national origin; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's actions. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001); *see also Peters v. Molloy Coll. of Rockville Ctr.*, No. 07-CV-2553, 2013 WL 5652503, at *10 (E.D.N.Y. Oct. 16, 2013) (internal citations omitted). A claim for Title VI retaliation exists when a plaintiff shows : "(1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protected activity and defendants' adverse action." *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010) (internal quotation and citation omitted).

Here, Khalil attempts to cure his previous pleading deficiencies by repeatedly referencing that his status as a "Pakistani Muslim/Moslem" influenced Pratt's decision to administratively withdraw him from school. *See e.g.*, SAC ¶¶ 18, 31. Rather than allege any specific facts supporting discrimination, Khalil makes unsubstantiated and inflammatory accusations against Pratt. *See e.g.*, SAC ¶ 31 ("plaintiff's race as a Pakistani/Muslim/Moslem male triggered the thoughts of terrorism, [and] prompted the state of mind of fear"), ¶ 52 ("the substantial and motivating factor in the school's decision in withdrawing the plaintiff … was motivated by stopping the Pakistani Moslem/Muslim with [a] mental disability from having the credentials of aspiring to be a registered professional Architect"). These

conclusory allegations, without underlying factual support, do not give rise to a plausible claim of intentional discrimination.

Insofar as Plaintiff alleges discrimination because he was "intentionally assigned the suicide bomber and the city of Afghanistan [as] the only brown … student," *see* Pl.'s Opp. at 15, this contention also fails for two reasons.  Initially, this argument is implausible because Khalil signed up for a class researching "bombs used during aerial warfare attacks," *see* SAC ¶ 5, and "simply chose[] a 'suicide bomber' as the concept responsive to [his] assignment."  *See* Pl.'s Opp., Ex. L.  Thus, this assignment was logically connected to his chosen course of study and appears to have been voluntarily undertaken.  Further, there is no allegation tying this purportedly discriminatory assignment to Pratt's ultimate decision to administratively withdraw Khalil.  Accordingly, Plaintiff's Title VI cause of action also fails on its merits.

## C.    Supplemental Jurisdiction Over State-Law Claims

Having recommended that each of Plaintiff's federal claims be dismissed, the Court further recommends declining to exercise supplemental jurisdiction over any state law causes of action that the SAC can be interpreted to plead upon a a favorable reading.  *See Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-cv-2485, 2011 WL 2471733, at *8 (E.D.N.Y. May 16, 2011) (recommending that the district court decline to exercise supplemental jurisdiction) *report and recommendation adopted*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011).  Supplemental jurisdiction over Plaintiff's state law claims is governed by 28 U.S.C. § 1367, which provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental

20

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . " 28 U.S.C. § 1367(a). "When a district court dismisses, pursuant to Rule 12(b)(6), all claims over which it properly has original subject–matter jurisdiction, the district court may still, under § 1367(c), exercise its discretion to retain supplemental jurisdiction over related state–law claims." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017). "In providing that a district court 'may' decline to exercise such jurisdiction, this subsection is permissive rather than mandatory." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). When such circumstances arise prior to the commencement of trial, Second Circuit precedent consistently recognizes that, "the balance of factors to be considered," which include "judicial economy, convenience, fairness and comity … will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*

Defendant filed its motion to dismiss the SAC in lieu of an answer. *See* DE [45]. Thus, this litigation is still in its initial stages and no discovery has taken place. Accordingly, the Court respectfully recommends declining to exercise supplemental jurisdiction over any state law causes of action. *See Quiroz*, 2011 WL 2471733, at *8 (recommending that the district court decline to exercise supplemental jurisdiction over state law claim once federal claims were dismissed).

### D.   Leave to File an Amended Complaint

Finally, Khalil requests leave to file a Third Amended Complaint to "include various pleading requirements of NYS CPLR 208 mental illness" and to, *inter alia*,

"[r]evise the statement of facts to create a much brighter, more factual perspective of the entirety of the conspiracy." *See* Pl.'s Opp. at 30.  The Court may grant such leave "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has held that "a *pro se* litigant in particular 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'"  *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)); *see also Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them").  Here, the Court cannot say with absolute certainty and upon a liberal reading of the SAC that amendment would be futile.  As such, the Court recommends that Khalil be granted one final opportunity to replead his clams in a manner that includes allegations that would justify tolling of the statute of limitations and satisfy the various other pleading requirements under the standards addressed above.

## IV.    Conclusion

For the reasons set forth above, the Court respectfully recommends that Pratt's motion to dismiss the Second Amended Complaint be granted in its entirety, without prejudice, and that Plaintiff be afforded one final opportunity to amend his Complaint to attempt to plausibly state a claim.

## V.    Objections

A copy of this Report and Recommendation is being served on Defendant by electronic filing on the date below.  Pratt is directed to serve a copy of this Report and Recommendation on Plaintiff and promptly file proof of service by ECF.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.   Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:        Central Islip, New York
              February 13, 2019        /s/ Steven I. Locke
                                       STEVEN I. LOCKE
                                       United States Magistrate Judge