UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT CO        N.Y.

★   JUL 12 2019   ★

-------------------------------------------------------

ADIL KHALIL,

                                        Plaintiff,

                    -against-

LONG ISLAND OFFICE
Civil Action No.
16-CV-6731(JFB)(SIL)

PRATT INSTITUTE, CITY OF NEW YORK,  STATE OF
NEW YORK, NYS TROOPER CHARLES KNAPP, UNITED
STATES OF AMERICA, FBI SPECIAL AGENT STEVE
BYRNES INDIVIDUALLY AND AS HIS OFFICIAL
COMPACITY, FBI SPECIAL AGENT ROBERT P. DUFFY
INDIVIDUALLY AND AS HIS OFFICIAL COMPACITY,
DAVID CHERKAS M.D. AS HIS PROFESSIONAL
COMPACITY, UMAR MANIA M.D. AS HIS PROFESSIONAL
COMPACITY, NYC HOSPITAL HEALTH AND HOSPITAL
CORPORATION, JAMES LEBOW ESQ. AS HIS PROFESSIONAL
COMPACITY, STATE UNIVERSITY OF NEW YORK (SUNY),
METROPOLITAIN TRANSPORTATION AUTHORITY DBA
LONG ISLAND RAILROAD

                                        Defendants,

-----------------------------------------------------X

**RECEIVED**

JUL 1 2 2019

**EDNY PRO SE OFFICE**

## Motion for Reconsideration

[1] Plaintiff hereby submits its reconsideration to the Honorable Judge Brian Cogan's order dated June 26, 2019.  The order dismissed plaintiff's claim against the collective defendants.


[2] Plaintiff is kindly requesting that the court update the docket to include each said defendant as noted in the caption.  The court of appeals will need an updated docket to including all defendants as well as both James LeBow and Steve Bynres.


[3] Claims alleging a civil rights conspiracy can be brought under Section 1983, Section 1985, and Section 1986. The filing deadline for a civil rights conspiracy claim "runs from each overt act causing damage," and "for each act causing injury, a claimant must seek redress within the prescribed limitations period." *Wells v. Rockefeller, 728 F.2d 209, 217 (3d Cir. 1984)* (emphasis added) (noting that for criminal conspiracies the limitations period does not begin to run until the commission of the last overt act of the conspiracy, but that the rule is different for civil conspiracies because "[i]n the civil case, actual injury is the focal point, not the illegal agreement per se, as is true in the criminal context" (citation omitted));

**1** | P a g e

*see also Jones v. Middletown Twp., 253 Fed. Appx. 184, 187 (3d Cir. 2007)* (rejecting the argument that the statute of limitations for a civil conspiracy claim does not begin to run until the commission of the last overt act that the plaintiff alleges to be part of the conspiracy, and holding that "[t]he statute of limitations begins to run at the time the claim accrues; time-barred claims cannot be resurrected by being aggregated and labeled 'continuing violations'*"); Jackson-Gilmore v. Dixon, 2005 WL 3110991, at \*5 (E.D. Pa. Nov. 18, 2005) (citing Wells, 728 F.2d at 217; Kost v. Kozakiewicz, 1 F.3d 176, 191 (3d Cir. 1993)).*

## Timelines of Complaint pt. 1

**[4]** "Equitable tolling is a principle of law stating that a statute of limitations shall not bar a claim in cases where the plaintiff, despite use of due diligence, could not or did not discover the injury until after the expiration of the limitations period. For example, when pursuing one of several legal remedies, the statute of limitations on the remedies not being pursued will be equitably tolled if the plaintiff can show (1) timely notice to the adverse party is given within applicable statute of limitations of filing first claim, (2) lack of prejudice to the defendant, (3) reasonable good faith conduct on part of the plaintiff. It has been held that equitable tolling applies principally if the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his or her rights. However, it has also been held that the equitable tolling doctrine does not require wrongful conduct on the part of the defendant, such as fraud or misrepresentation." *[51 American Jurisprudence 2d Limitation of Actions § 174 (2007)]. Seattle Audubon Society v. Robertson [931 F.2d 590 (9th Cir. 1991), rev'd on other grounds, 503 U.S. 429 (1992)], Kosman [v. State], 199 Ariz. 184, 16 P.3d at 213, Kyles v. Contractors/Eng'rs Supply, Inc., 190 Ariz. 403, 404, 406, 949 P.2d 63, 64, 66 (App.1997), Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir.1996), Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir.2000), See Seitzinger, 165 F.3d at 240.*

**[5]** Plaintiff, despite use of due diligence, could not or did not discover as a result of his attendance at Pratt Institute he would be deprived a fourth amendment right to consistent attempts of involuntary psychiatric hospitalization by law enforcement personal on 02/07/14, 12/26/15, 05/03/18, 05/25/18 and 08/18/18. ¶ Timely notice to the adverse party was given within the applicable statute of limitations of filing first claim through the NYC comptroller's office and filing suit with the District Court; plaintiff demonstrated a lack of prejudice to the defendant when he continued to pursue a living at the NYC buildings department as a class 2 filing representative, and reasonable good faith conduct on part of the plaintiff was demonstrated. The Plaintiff acted in due diligence when they reported discrimination and a conspiracy to the Federal Bureau of Investigations on or about 02/08/14, so as to take civil action. The Defendant acted with wrongful conduct when continuing to violate petitioner's civil rights, denying him the ability to function in society by furthering his psychosis.

**[6]** The Supreme Court has also held that state tolling statutes, which provide a plaintiff with an

additional period of time in which to bring a lawsuit equal to the period of time in which the plaintiff was legally disabled, apply to section 1983 cases. *Board of Regents v. Tomanio, (446 U.S. 478, 100 S. Ct. 1790, 64 L. Ed. 2d 440 [1980]).* Under section 1983, the statute of limitations does not begin to run until the Cause of Action accrues. The cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of the action" *Cox v. Stanton, 529 F.2d 47 [4th Cir. 1975].* The injury sustained by the plaintiff was known on 02/07/14 and again on 12/26/15 when the City of New York continued to violate the petitioner's 4th amendment right. The statute of limitation has begun to run on 12/26/15 when the plaintiff discovered the injury of repeated involuntary psychiatric hospitalization. Thus, the statue of limitations ended on 12/26/17, and the instant action was filed on 11/29/16 within the statute of limitation period.

**Timelines of Complaint pt. 2**

**[7]** The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statue of limitation of defense when a plaintiff is induced by fraud, misrepresentation or deception to refrain from filing a timely action. The defendant concealed documentation and as a result prevented the timely commencement of the instant action. The denial of these imperative documents has allowed the court to question factual statements presented in the plaintiffs complaint, and has delayed the commencement of the instant action.

**[8]** The doctrine of equitable estoppel applies when the plaintiff is induced by fraud, misrepresentation or deception to refrain from filing a timely action. On 11/23/13 James LeBow induced the complainant by fraud, misrepresentation or deception when accepting legal fees for appeal to the United States Department of Education Office of Civil Rights and failing to provide legal services. LeBow relocated his law practice to the State of Texas on 11/05/2015. The complainant was induced by fraud, misrepresentation or deception to refrain from filing a timely action and could not have known until 11/05/2015.

**[9]** The doctrine of equitable estoppel applies when the plaintiff is induced by fraud, misrepresentation or deception to refrain from filing a timely action. On or about 11/07/2013 Federal Bureau of Investigations Special Agent Steve Byrnes induced the complainant by fraud, misrepresentation or deception when plaintiff asked about status of an appeal to a Department of Justice Office of Civil Rights (OCR) complaint filed by former attorney James LeBow with Secretary of Education Arne Duncan. Federal Bureau of Investigations Special Agent Steve Byrnes induced petitioner by fraud and responded "Your complaint has been received and is being handled." Steve Byrnes enforced that the plaintiff was responsible to pay his student loans, and brusquely enforced no cause of action exists against the United States under The Tucker Act (March 3, 1887, ch. 359, 24 Stat. 505, 28 U.S.C. § 1491. Special Agent Steve Byrnes terminated communication with petitioner on or about 2016. The complainant was induced by fraud, misrepresentation or deception to refrain from filing a timely action and could not have known

until 04/24/17 when the United States Department of Education office of the general council stated, "With respect to the investigation of your complaint against the Pratt Institute, on May 15, 2012, OCR issued a determination that there was insufficient evidence to substantiate your allegations of discrimination based on disability and closed the complaint. No further action was taken." The statute of limitation has begun to run on 04/24/17 when the plaintiff discovered that FBI agent Steve Byrnes induced him by fraud on 11/07/13 and no appeal was ever filed by James LeBow. Thus, the statue of limitations ended on 04/24/19, and the instant action was filed on 11/29/16 within the statute of limitation period.

**[10]**  The Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99) is a federal law that protects the privacy of student education records. The law applies to all schools that receive funds under an applicable program of the U.S. Department of Education. Parents or eligible students have the right to inspect and review the student's education records maintained by the school. Schools are not required to provide copies of records unless, for reasons such as great distance, it is impossible for parents or eligible students to review the records. According to Pratt Family Education Rights and Privacy Act (FERPA) ¶, the right to inspect and review educational records within forty-five days (45 days) when the Institute receives written request.

**[11]**  Plaintiff requested academic records through registrar's office on 04/26/11. ¶38 Interaction with school administration occurred on 04/26/11, 05/04/11, and 05/06/11. On 10/13/12 and 10/31/12, ¶39, 48, 49 student again attempted to requested academic records. Finally on 07/04/13, appropriate documentation, Students Request to Inspect and Review Educational Records ¶52 was submitted. Pratt's defense attorneys contacted the plaintiff on 12/06/12, 12/11/12, 05/09/13. ¶51, 53, 54 Finally on 08/27/13 ¶55 inspection of academic records was provided. Several pertinent documents had been excluded. No attendance records for the class could be provided by the Institute. The majority of letter's from the Vice President to the student in regards to the involuntary administrative withdrawal where not included. Nor any disciplinary or behavioral issues indicated in previous classes.

**[12]**  Equal protection and denial of, either as direct causes of action or pursuant to Section 1983, part of the Civil Rights Act of 1871, the plaintiff was denied academic records pursuant to Family Rights and Privacy Act of 1974 (FERPA; Buckley Amendment), as amended, 20 U.S.C. § 1232g, and its implementing regulations at 34 C.F.R Part §99.

## Timelines of Complaint pt. 3

**[13]**  The mental injury sustained by the plaintiff was known on 12/26/15. ¶10 The physical injury sustained by the plaintiff was known on 01/13/18 ¶82 as secondary uvetic glaucoma. Due to a

temporary mental incapacity to protect one's rights, plaintiff could not, because of mental health, personal injury and unlawful arbitrary government harassment infringing on his first, fourth and fourteenth amendment constitutional right.

**[14]** CPLR§208 extends the statute of limitation if a person entitled to bring an action is insane when it accrues. The first definition of insanity under CPLR§208 was recently presented in *Hurd v County of Allegany*, the Appellate Division, Fourth Department, construing the terms to include "a temporary mental incapacity to protect one's rights resulting from personal injury.

**[15]** However the New York Court of Appeals has construed this provision narrowly, holding that the legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an "<u>overall inability to function</u> which is actually attributed to a mental rather than a physical condition which may properly serve as the predicate for an application for the insanity toll." *See McBride v Cnty. of Westchester, 622 N.Y.S.2d 00 102 (2d Dep't 1995)(emphasis added)* Ultimately, "[a] plaintiff seeking to obtain the benefits of this statue must not only show that he suffered from such an inability to function in society, but also that his disability was continuous during the relevant period." *See Keitt v. City of New York, No. 09 CV 5663 (PKC) (DF), 2010 U.S. Dist. LEXIS 91857, at *23 (S.D.N.Y. Aug 9,2010).*

**[16]** Plaintiff suffers from an overall inability to function. An inability to function in almost all areas including self care, daily living, social functioning and the ability to complete tasks in a timely manner. DSM-4 book defines inability to function in almost all areas as GAF-30 (eg, stays in bed all day, no job, home, or friends). Plaintiff meets the requirements of New York State Department of Mental Health and Hygiene to be considered an adult with a serious and persistent mental illness.

**[17]** On 11/28/14 Dr. Jean Yang ends her professional relationship with the plaintiff stating, "I find it very difficult to continue to treat your uvetis, because you often take medications on your own. I often was not aware of exactly/ how the medications are taken. This is potentially very dangerous and not conducive to good care. I feel very uncomfortable to continue to treat you this way." ¶64 Plaintiff has serious impairment in self care and taking medications on time.

**[18]** Plaintiff is homeless, at the age of 38 plaintiff lives with his parents at two separate addresses. Every week the plaintiff moves from residence to residence, from Shirley, N.Y. to Jamaica, N.Y., nearly a 65 mile commute every few days. Plaintiff belongings are split between both Suffolk County N.Y. and New York City. Plaintiff does qualified as homeless. During 2016 plaintiff lived in a music rehearsal room in Long Island City, and alleges he would urinate in bottles inside his bands room if no bathroom was available for his use. Empire Studio in Long Island City does not facilitate the rehearsal spaces with showers, and overnight sleeping is strictly prohibited although the plaintiff unlawfully lived at the

rehearsal room.  New York City Police Department has conducted several emotionally disturbed person operations at the plaintiff's parent's apartment, and so all the neighbors and local store owners do believe that plaintiff is suffering from mental illness, by actions of the City of New York.  Due to the ongoing problems with the police department plaintiff has been banned from several restaurant and bars in the Queens and Brooklyn area.  Plaintiff suffers from major social functioning issues in New York City due to the actions of the NYPD.  Plaintiff suffers from major social functioning issues in Shirley, N.Y. due to the actions of the Robert Duffy and the Federal Bureau of Investigations.  Several of the plaintiff's childhood neighbors are aware of the consistent visits by the FBI to the plaintiff's home in 2017. Plaintiff currently has fifty pending criminal charges which impacts his social functioning ability.  Plaintiff has been banned from the Long Island Railroad due to his protective action against the City of New York and maintains a horrendous driving record with the NYS department of motor vehicles.  On 01/02/19 plaintiff printed a department of motor vehicles abstract of driver record. ¶101  Plaintiff has major impairment with transportation and living.  While being homeless and living within a sixty mile distance plaintiff has been banned from the Long Island Railroad and constant suspended licenses.

[19]    On 11/20/14 NYC DCAS take of a bomb threat report from security agent Echevarno stating, "When Khalil was told that the item was still in his bag and to look for it he began shouting at the guards. (S/O Allen) I supervisor Echevarno walked over to the back table of machine #3046 and attempted to explain what was being asked of Khalil within his bag Khalil continued to get voice strong and then stated I don't have a bomb in my bag. But I can get one!  At that point I asked Khalil to gather his belongings and exit the building."  When plaintiff walked outside he called Federal Agent Steve Bynres to complain about discrimination at a place of public accommodation in violation of federal law. "...but now he comes back cursing and carrying on with threats and refusing to find the item...Khalil at this point continued cursing at me Supervisor Echevarno calling me a bitch ass nigga and asshole. Further stating oh my god you found explosives." ¶62    On 11/20/14 NYC DCAS take of a bomb threat report from security agent Sherry stating, "I remember Mr. Khalil shouting at s/o Allen and asking him what the fuck do you see in my bag?!... I remember S/O Echevarno asking him to leave the building and Mr. Khalil started cursing and said, what the fuck are you looking for a bomb?! You fucking asshole! A bitch ass nigga! Suck my dick! He also invited S/O Echevarno outside to fight.""As Mr. Khalil was exiting the building for the second time he then passed S/O Echevarnos desk and cursed him out saying Fuck you! Come outside! I have been here in this building since 2011." ¶63 On 01/15/15 plaintiff was told to leave the plan examination.  After the meeting the plaintiff's boss explained that, "I was told my plans will not be approved if you keep coming to the buildings department.  You're suing Pratt Institute? My son reported an incident to the OCR and nothing ever came of that.  You're wasting your time! I can't send you back to the buildings department, they don't want you there.  We can't continue working together." Charles Coutain, a NYC employee, refuses to contract business with the plaintiff because of his protective action against the Pratt Institute. ¶67   On 02/17/16 plaintiff files a New York City Commission on Human Rights discrimination complaint against the NYC Buildings Department.  On 04/13/18 New York City Buildings Department Building Commissioner orders an unlawful order when

investigators came to investigate "Sale of porn in basement regular movies up stairs." And states "cellar level, no movies, only office space @ storage for pakashan newspaper." No construction has been done in the cellar wide open space with a computer fax machine and pinter.  No plumbing, no electrical, no general construction, no removals, alterations or repairs.  ¶84 On 08/14/19 plaintiff was attacked and harassed by Filing Representative Kenneth Heath (#1517) in the New York City Queens Buildings Department.  Mr. Heath assaulted and vandalized the plaintiffs documentation prepared for his Queen's Criminal Court appearance on 08/14/19.  Mr. Heath stated, "Nobody likes you!  I don't give a fuck about your criminal charges!  I hope they put you in jail!"  On 02/22/19 plaintiff was harassed by filing representative John Doe '1' in the New York City Manhattan Buildings Department.  John Doe '1' stated, "When I was working for an office I had a long beard, and I would go to the bar after work and everyone would call me Al-Qaeda."  As John Doe '1' turned and pointed at the plaintiff and laughed, "Like this guy right here! He looks like Osama Bin Laden's child!"  Mervin Van Putten JR from Allied Universal Security denied plaintiff protective action when plaintiff complained about discrimination.  On 05/31/19 Mervin Van Putten JR from Allied Universal Security company falsified a police report against the plaintiff and stated plaintiff was, "spitting" or assaulting the visitors on the third floor of the NYC buildings department.  As a result NYPD DCAS officer Wilson shield# 0316 and NYPD DCAS officer Schalderon shield# 0405 forcefully removed the plaintiff in violation of his first, fifth and 14th amendments rights, and denied the plaintiff the ability to complete his job responsibilities under 1 RCNY 104-24.  Plaintiff's employer writes letter stating plaintiff has not been producing work or going to work on time since 2014. ¶95  Plaintiff suffers from major impairment issues with employment and producing work in a timely fashion.

[20]    Plaintiff suffers from an overall inability to function and meets the requirements of N.Y.S.C.P.L.R.§208.  An inability to function in all areas including self care, daily living, social functioning and the ability to complete tasks in a timely manner.  Plaintiff meets the requirements of New York State Department of Mental Health and Hygiene to be considered an adult with a serious and persistent mental illness.  Marked difficulties in self care (personal hygiene, diet, clothing avoiding injuries, securing health care or complying with medical advice).  Marked restriction of activities of daily living (maintaining a residence, using transportation, day to day money management, accessing community services). Marked difficulties in maintaining social functioning (establishing and maintaining social relationships, interpersonal interactions with primary partner, children or other family members, friends, neighbors, social skills, compliance with social norms, appropriate use of leisure time).  Frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (ability to complete tasks commonly found in work settings or in structured activities that take place in home or school settings, individual's may exhibit limitations in these areas when they repeatedly are unable to complete simple tasks within an established time period, make frequent errors in tasks, or require assistance in the completion of tasks).

[21]    Plaintiff is a qualified individual under N.Y.S.C.P.L.R.§208.  Plaintiff suffers from the autoimmune

disease Sarcoidosis suffering from systematic inflammation, secondary uvetic glaucoma ¶23, 24, 26, 46,70, 71, 82, 103, and North Shore University Hospital on <u>April 10, 2006</u>, diagnoses the plaintiff as DSM-IV: ¶10

> Axis 1:  309.3 Adjustment Disorder with disturbance of conduct
>
> Axis 2:  301.9 Personality Disorder NOS with schizotypal and paranoid features.
>
> Axis 3:  None
>
> Axis 4:  Educational problems, problems related to social environment.
>
> Axis 5:  50

*DSM-IV Axis 5: 50 Global Assessment of Functioning (GAF); serious symptoms (e.g.. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).*

*DSM-IV Axis 5: 40 Global Assessment of Functioning (GAF); some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work, child frequently beats up younger children, is defiant at home, and is failing at school).*

*DSM-IV Axis 5: 30 Global Assessment of Functioning (GAF); behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR <u>inability to function</u> in almost all areas (eg, stays in bed all day, no job, home, or friends).*

*DSM-IV Axis 5: 20 Global Assessment of Functioning (GAF); some danger of hurting self or others (e.g., suicide attempts without clear expectation of death, frequently violent, manic excitement) OR occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g largely incoherent or mute).*

*DSM-IV Axis 5: 10 Global Assessment of Functioning (GAF); persistent danger of severely hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death.*

**[22]**   Due to the temporary arbitrary government harassment infringing on the Plaintiff's first, fourth and fourteenth amendment right defendant has caused the plaintiff an <u>overall inability to function</u> in almost all areas (GAF:30), and meets the requirements of New York State Department of Mental Health and Hygiene to be considered an adult with a serious and persistent mental illness.   An inability to

function in almost all areas including self care, daily living, social functioning and the ability to complete tasks in a timely manner (GAF:30).

**[23]** Marked difficulties in self care (personal hygiene, diet, clothing avoiding injuries, securing health care or complying with medical advice). Plaintiff fails to maintain minimal personal hygiene with an extremely difficult time taking acetazolamide or methrotrexate and other medications to treat the sarcoidosis while being homeless. ¶58, 87  The states multiple detentions and false arrest of the plaintiff in invoking the special relations doctrine has caused plaintiff severe problems with self care. Plaintiff was in the municipalities custody on 02/07/14, 12/26/15, 05/03/18, on 05/25/18 and on 08/18/18, ¶56, 66, 85, 91, 96  The defendants acted recklessly, intentionally or with gross negligence with deliberate indifference for the plaintiffs rights secured and granted under the first, fourth and fourteenth amendment to the Constitution of the United States. While in the custody of the state plaintiff has been denied medication for ocular inflammation, and instead on 05/25/18 against his will and consent the defendant had forcefully injected Halodol anti-psychotic medications, disabling the plaintiff's ability to function by furthering psychosis; causing his thoughts and speech to be largely incoherent  (GAF:20). ¶94 The City of New York acted with a deliberate indifference for plaintiff's wellbeing, and violation of the eighth amendment cruel and unusual punishment.

**[24]** Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. In law, the courts apply the deliberate indifference standard to determine if a professional has violated an inmate's civil rights. Deliberate indifference occurs when a professional knows of and disregards an excessive risk to an inmate's health or safety. Even though it is difficult to identify what does and does not constitute deliberate indifference, courts have recognized several factual scenarios where deliberate indifference exists. For example, intentionally refusing to respond to an inmate's complaints has been acknowledged as constituting deliberate indifference. *Gutierrez v. Peters, 111 F.3d 1364, 1366 (7th Cir. Ill. 1997)*; Intentionally delaying medical care for a known injury (i.e. a broken wrist) has been held to constitute deliberate indifference. *Farmer v. Brennan, 511 U.S. 825 (U.S. 1994)*

**[25]** The eighth amendment to the Constitution of the United States, excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.  Article I, Section 5 of the New York State Constitution provide for the protection against bail; fines; punishments; and detentions.  "The definition of cruel and unusual punishment is progressive and is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice. The Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society. The decency test, of necessity, looks to comparative law for guidelines in determining what penalties are widely regarded as proper for the offense in question. *People v*

*Lorentzen 387 Mich. 167 \*; 194 N.W.2d 827 \*\*; 1972 Mich. LEXIS 158 \*\**

**[26]** Marked restriction of activities of daily living (maintaining a residence, using transportation, day to day money management, accessing community services).    Plaintiff has been homeless since 2011, in-out of storage rooms/rehearsal rooms in Long Island City and/or with his elderly parents in Jamaica Queens and Shirley, NY.  Plaintiff has no credit due to largely incoherent outbursts (GAF:20) and refusal of student loan repayments, no college diploma and borderline unemployed/self-employed with restrictions on transportation. ¶79 NYS harassment infringing on his right guaranteed by the Constitution of the United States.  NYPD CompStat—or COMPSTAT computerized database for discriminatory harassment on disability with malicious and sadistic intent has resulted in the encroachment of multiple suspended licenses within an eighteen month term, in conspiracy with the NYS to violate the peoples fifth and sixth amendment right to due process, the double jeopardy clause and fair trial guaranteed by the Constitution of the United States.  *Cordero v City of New York 282 F. Supp. 3d 549 \*; 2017 U.S. Dist. LEXIS 171961 \*\*; 2017 WL 4685544*

**[27]**    Marked difficulties in maintaining social functioning (establishing and maintaining social relationships, interpersonal interactions with primary partner, children or other family members, friends, neighbors, social skills, compliance with social norms, appropriate use of leisure time).  Plaintiff has not been in a relationship since 2008.  And as noted by the Dean at the New York Institute of Technology on the evaluation of April 10, 2006 "…has no friends…" ¶10    CompStat—or COMPSTAT has made it quite trouble-free for the NYPD to criminally stalk in violation of 42U.S.C.§1985(3) with local private bar and restaurant owners.  The City of New York is defaming plaintiff that '…he is a documented schizophrenic, don't talk to him and stay away! He is suicidal!'

**[28]**  Frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (ability to complete tasks commonly found in work settings or in structured activities that take place in home or school settings, individual's may exhibit limitations in these areas when they repeatedly are unable to complete simple tasks within an established time period, make frequent errors in tasks, or require assistance in the completion of tasks).  Plaintiff is encountering discrimination and retaliation at the NYC buildings department, a place of employment, in violation of *42U.S.Code§2000a - Prohibition against discrimination or segregation in places of public accommodation.  Retaliation for his protected activity against the New York City Police Department as well as Pratt Institute and the U.S. Department of Education Office of Civil Rights.*

**[29]**  *DSM-IV Axis 5: 30 Global Assessment of Functioning (GAF);* behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR <u>inability to function</u> in almost all areas (eg, stays in bed all day, no job, home, or friends).

**[30]**  *DSM-IV Axis 5: 20 Global Assessment of Functioning (GAF);* some danger of hurting self or others (e.g., suicide attempts without clear expectation of death, frequently violent, manic excitement) OR occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g largely incoherent or mute).

**[31]**  Plaintiff was in NYPD custody on 02/07/14, 12/26/15, 05/03/18, on 05/25/18 and on 08/18/18 ¶56, 66, 85, 91, 96 on the fabricated probable cause he was either suicidal, homicidal or violent. Due to a temporary mental incapacity to protect one's rights, plaintiff could not, because of arbitrary government harassment infringing his first, fourth and 14th amendment rights guaranteed by the Constitution of the United States. *Camac v. Long Beach City Sch. Dist., No. 09 CV 5309 DRH ARL, 2011 WL 3030345, at *3 (E.D.N.Y. July 22, 2011).*

**[32]**  By the actions of the City of New York, in detaining the plaintiff for emergency psychiatric evaluation under NYSMHL§9.41 as emotionally disturbed person (EDP) CompStat—or COMPSTAT designee on 02/07/14, 12/26/15, 05/03/18, on 05/25/18 and 08/18/18 ¶56, 66, 85, 91, 96 city employees acknowledge plaintiff as insane, qualified under NYSCPLR§208. The legal system's perception of mental illness is defined by society, and it is the application of that understanding to a specific person or fact pattern that defines the relationship between mental illness and the law. District Court is free to conduct independent evaluation at their discretion. The mental injury sustained by the plaintiff was known on April 10, 2006. ¶10

Axis 1:  309.3 Adjustment Disorder with disturbance of conduct

Axis 2:  301.9 Personality Disorder NOS with schizotypal and paranoid features.

Axis 3:  None

Axis 4:  Educational problems, problems related to social environment.

Axis 5:  50

**[33]**  The mental injury sustained by the plaintiff was known on 12/26/15. ¶10  The physical injury sustained by the plaintiff was known on 01/13/18 ¶82 as secondary uvetic glaucoma.  Due to a temporary mental incapacity to protect one's rights, plaintiff could not, because of mental health, personal injury and unlawful arbitrary government harassment infringing on his first, fourth and fourteenth amendment constitutional right.

**[34]**  CPLR§208 extends the statute of limitation if a person entitled to bring an action is insane when it accrues.  The first definition of insanity under CPLR§208 was recently presented in *Hurd v County of Allegany*, the Appellate Division, Fourth Department, construing the terms to include "a temporary mental incapacity to protect one's rights resulting from personal injury.

[35]  N.Y.C.P.L.R.§208

"If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, or the person under the disability dies, the time within which the action must be commenced shall be extended to three years after the disability ceases or the person under the disability dies, whichever event first occurs; if the time otherwise limited is less than three years, the time shall be extended by the period of disability. The time within which the action must be commenced shall not be extended by this provision beyond ten years after the cause of action accrues, except, in any action other than for medical, dental or podiatric malpractice, where the person was under a disability due to infancy. This section shall not apply to an action to recover a penalty or forfeiture, or against a sheriff or other officer for an escape."

[36]   However the New York Court of Appeals has construed this provision narrowly, holding that the legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an "overall inability to function which is actually attributed to a mental rather than a physical condition which may properly serve as the predicate for an application for the insanity toll." *See McBride v Cnty. of Westchester, 622 N.Y.S.2d 00 102 (2d Dep't 1995)(emphasis added)* Ultimately, "[a] plaintiff seeking to obtain the benefits of this statue must not only show that he suffered from such an inability to function in society, but also that his disability was continuous during the relevant period." *See Keitt v. City of New York, No. 09 CV 5663 (PKC) (DF), 2010 U.S. Dist. LEXIS 91857, at *23 (S.D.N.Y. Aug 9,2010).*

[37]   On September 1, 2016 the plaintiff is confirmed to have the auto immune disease sarcodoisis on a surgical pathology reportwith addendum. ¶70  On November 18, 2016 Mount Sinai School of Medicine Division of Pulmonary confirmed and notified the plaintiff of diagnoses for the autoimmune disease Sarcoidosis. ¶71

[38]   Sarcoidosis is a systemic and inflammatory disease of unknown aetiology, which commonly affects the lungs, the skin, the lymph nodes, the liver, and the nervous system. This disorder can be chronic, progressive, and self-limiting.  The aetiopathogenesis, stressful life events like getting married, starting a job, and changes in responsibilities at work have been shown to significantly influence the onset and the worsening of the disease. Among patients with sarcoidosis, a high incidence of alexithymic personality traits has also been evidenced.

[39]   The more severe forms may have profound effects on the quality of life of the patients, and a high

prevalence of depressive symptoms was found in affected patients. It has been suggested that clinicians should consider a psychological intervention with or without antidepressants according to whether significant depressive symptoms are identified.

[40] Neurosarcoidosis (NS) is the neurologic manifestation of sarcoidosis, a granulomatous inflammatory disease, which although most often affects the lungs, can also affect the eyes, skin, liver, spleen, and nervous system. Neurosarcoidosis affects 5 to 15 percent of sarcoidosis patients. Depending on the anatomic location, NS symptoms can range from peripheral neuropathy to more central features, including memory loss and changes in mood and/or behavior. Psychiatric manifestations, include, but are not limited to, delirium and psychosis, and have been reported to occur in 20 percent of patients with NS or one percent of all those affected with sarcoidosis. Sarcoidosis is comparable to the lifetime prevalence of schizophrenia, which ranges from 0.59 to 1.46 percent of the general population. Furthermore, one study reported that 2 of 268 patients with first-episode schizophrenia had NS.

[41]   Schizotypal personality disorder is characterized by someone who has great difficulty in establishing and maintaining close relationships with others. A person with schizotypal personality disorder may have extreme discomfort with such relationships, and therefore have less of a capacity for them. Someone with this disorder usually has cognitive or perceptual distortions as well as eccentricities in their everyday behavior. ¶10, 33

[42]   Individuals with schizotypal personality disorder often have ideas of reference (e.g., they have incorrect interpretations of casual incidents and external events as having a particular and unusual meaning specifically for the person). People with this disorder may be unusually superstitious or preoccupied with paranormal phenomena that are outside the norms of their subculture.  ¶10, 33

[43]   Those with this disorder often seek treatment for the associated symptoms of anxiety, depression, or other dysphoric effects rather than for the personality disorder features per se.   A personality disorder is an enduring pattern of inner experience and behavior that deviates from the norm of the individual's culture.   The pattern is seen in two or more of the following areas: cognition; affect; interpersonal functioning; or impulse control. The enduring pattern is inflexible and pervasive across a broad range of personal and social situations. It typically leads to significant distress or impairment in social, work, or other areas of functioning. The pattern is stable and of long duration, and its onset can be traced back to early adulthood or adolescence.

[44] Plaintiff suffers from the autoimmune disease sarcoidosis suffering from systematic inflammation, secondary uvetic glaucoma ¶71, 82, 83, and North Shore University Hospital on April 10, 2006,

diagnoses the plaintiff as DSM-IV: ¶ 10

     Axis 1: 309.3 Adjustment Disorder with disturbance of conduct

     Axis 2: 301.9 Personality Disorder NOS with schizotypal and paranoid features.

     Axis 3: None

     Axis 4: Educational problems, problems related to social environment.

     Axis 5: 50

Plaintiff's adjustment disorders can be traced back to educational problems 11/07/01 ¶10 and problems related to social environment. Since 02/07/14 law enforcement has violated the plaintiff's first, fourth and fourteenth amendment constitutional right on five (5) separate incidents. ¶56, 66, 85, 91, 96 Under the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, the people are 'to be secure in their persons . . . against unreasonable searches and seizures . . . ." *Maryland v. Pringle, 540 U.S. 366, 369 (2003) (quoting U.S. Const. amend. IV.).* "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation removed).* "The common law tort of false arrest is a species of false imprisonment, an action 'derived from the ancient common-law action of trespass [that] protects the personal interest of freedom from restraint of movement.'" *Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir.1995) (citing Broughton v. State, 37 N.Y.2d 451, 456 (1975)).*

**[45]** Mental illnesses, including personality disorders, can potentially modify applications of the law in criminal and civil contexts. Classification and specific definitions of mental disorders can have a major impact on how and when they serve as modifiers. The legal system's perception of mental illness is defined by society, and it is the application of that understanding to a specific person or fact pattern that defines the relationship between mental illness and the law. Clinicians entering the forensic arena, however, for the most part, do not immerse themselves in thinking about the current social definition or understanding of mental illness.

**[46]** NYS Penal Law §40.15 mental disease or defect is invoked when in any prosecution for an offense, it is an affirmative defense that when the defendant engaged in the proscribed conduct, he lacked criminal responsibility by reason of mental disease or defect. Such lack of criminal responsibility means that at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity to know or appreciate either:

     1. The nature and consequences of such conduct; or

     2. That such conduct was wrong

**[47]** New York State Department of Mental Health and Hygiene has stated that in order to be

considered an adult with a serious and persistent mental illness, "1" below must be met, in addition to either "2", "3", or "4":

1. Designated                                    Mental                                    Illness

   The individual is 18 years of age or older and currently meets the criteria for a DSM-IV psychiatric diagnosis other than alcohol or drug disorders, organic brain syndromes, developmental disabilities or social conditions. ICD-CM psychiatric categories and codes that do not have an equivalent in DSM-IV are also included mental illness diagnoses.

And

2. SSI or SSDI due                          to                          Mental                          Illness

   The individual is currently enrolled in SSI/SSDI due to a designated mental illness.

Or

3. Extended Impairment in Functioning due to Mental Illness

   a. Documentation that the individual has experienced two of the following four functional limitations due to a designated mental illness over the past 12 months on a continuous or intermittent basis:

      i. Marked difficulties in self care (personal hygiene, diet, clothing avoiding injuries, securing health care or complying with medical advice).

      ii. Marked restriction of activities of daily living (maintaining a residence, using transportation, day to day money management, accessing community services).

      iii. Marked difficulties in maintaining social functioning (establishing and maintaining social relationships, interpersonal interactions with primary partner, children or other family members, friends, neighbors, social skills, compliance with social norms, appropriate use of leisure time).

      iv. Frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (ability to complete tasks commonly found in work settings or in structured activities that take place in home or school settings, individual's may exhibit limitations in these areas when they repeatedly are unable to complete simple tasks within an established time period, make frequent errors in tasks, or require assistance in the completion of tasks).

Or

4. Reliance      on      Psychiatric      Treatment,      Rehabilitation      and      Supports

   A documented history shows that the individual at some prior time met the threshold for 3 (above), but the symptoms and/or functioning problems are currently attenuated by medication or psychiatric rehabilitation and supports. Medication refers to psychotropic medications      which      may      control      certain      primary      manifestations      of      mental

disorder; e.g. hallucinations, but may or may not affect functional limitations imposed by the mental disorder. Psychiatric rehabilitation and supports refer to highly structured and supportive settings (e.g. Congregate or Apartment Treatment Programs) which may greatly reduce the demands placed on the individual and thereby, minimize overt symptoms

**[48]**  On a forensic psychiatric evaluation order by NYiT issued by North Shore University Hospital on April 10, 2006, the plaintiff is diagnosed as: ¶10

    Axis 1:  309.3 Adjustment Disorder with disturbance of conduct

    Axis 2:  301.9 Personality Disorder NOS with schizotypal and paranoid features.

    Axis 3:  None

    Axis 4:  Educational problems, problems related to social environment.

    Axis 5:  50

And when assessing risk for violence (HCR-20) from plaintiff's April 10, 2006 forensic psychiatric evaluation states: ¶10

Major Risk Factors for Violence:

    Code:      0= Absent    1= Partially/Possibly Present   2= Yes/Present

A.  Historical Items

| | | |
|---|---|---|
| 1. | Previous Violence | 0 |
| 2. | Young Age at First Violent Incident | 0 |
| 3. | Relationship Instabilities | 0 |
| 4. | Employment Problems | 0 |
| 5. | Substance Use Problems | 2 |
| 6. | Major Mental Illnes | 1 |
| 7. | Psychopathy | 0 |
| 8. | Early Maladjustment | 0 |
| 9. | Personality Disorde | 2 |
| 10. | Prior Supervision Failure | 0 |

B.  Clinical Items

| | | |
|---|---|---|
| 1. | Lack of Insight | 2 |
| 2. | Negative Attitudes | 0 |
| 3. | Active Symptoms of Major Mental Illness | 0 |

|   | 4. | Impulsivity | 0 |
|---|----|-------------|---|
|   | 5. | Unresponsive to treatment | 0 |

C.  Risk Management Items

|   | 1. | Plans Lack Feasibility | 0 |
|---|----|------------------------|---|
|   | 2. | Exposure to Destabilizers | 2 |
|   | 3. | Lack of Personal Support | 0 |
|   | 4. | Noncompliance with Remediation Attempts | 0 |
|   | 5. | Stress | 2 |

**[49]** Plaintiff is considered an adult with mental illness. The plaintiff was 25 years of age at the time of diagnoses and currently meets the criteria for a DSM-IV psychiatric diagnosis other than alcohol or drug disorders, organic brain syndromes, developmental disabilities or social conditions. According to the forensic psychiatric evaluation from North Shore University Hospital ordered by NYiT dated April 10, 2006 plaintiff was diagnosed DSM-IV Axis 5: 50 Global Assessment of Functioning; serious symptoms (e.g.. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). ¶95

**[50]** Plaintiff was in NYPD custody on 02/07/14, 12/26/15, 05/03/18, on 05/25/18 and on 08/18/18 on the fabricated probable cause he was suicidal, homicidal or violent. Due to a temporary mental incapacity to protect one's rights, plaintiff could not, because of arbitrary government harassment infringing his first, fourth and 14th amendment rights guaranteed by the Constitution of the United States. *Camac v. Long Beach City Sch. Dist., No. 09 CV 5309 DRH ARL, 2011 WL 3030345, at *3 (E.D.N.Y. July 22, 2011).* ¶56, 66, 85, 91, 96

**[51]** Marked difficulties in self care (personal hygiene, diet, clothing avoiding injuries, securing health care or complying with medical advice). Plaintiff fails to maintain minimal personal hygiene with an extremely difficult time taking acetazolamide or methotrexate and other medications to treat the sarcoidosis while being homeless. ¶58 The states multiple detentions and false arrest of the plaintiff in invoking the special relations doctrine has caused plaintiff severe problems with self care. Plaintiff was in the municipalities custody on 02/07/14, 12/26/15, 05/03/18, on 05/25/18 and on 08/18/18,  The defendants acted recklessly, intentionally or with gross negligence with deliberate indifference for the plaintiffs rights secured and granted under the first, fourth and fourteenth amendment to the Constitution of the United States. While in the custody of the state plaintiff has been denied medication for ocular inflammation, and instead on 05/25/18 against his will and consent the defendant had forcefully injected Halodol anti-psychotic medications, disabling the plaintiff's ability to function by

furthering psychosis; causing his thoughts and speech to be largely incoherent  (GAF:20).  ¶94  The City of New York acted with a deliberate indifference for plaintiff's wellbeing, and violation of the eighth amendment cruel and unusual punishment. ¶56, 66, 85, 91, 96

**[52]**  Marked restriction of activities of daily living (maintaining a residence, using transportation, day to day money management, accessing community services).    Plaintiff has been homeless since 2011, in-out of storage rooms/rehearsal rooms in Long Island City and/or with his elderly parents in Jamaica Queens and Shirley, NY.   Plaintiff has no credit due to largely incoherent outbursts (GAF:20) and refusal of student loan repayments, no college diploma and borderline unemployed/self-employed with restrictions on transportation. ¶101   NYS harassment infringing on his right guaranteed by the Constitution of the United States. NYPD CompStat—or COMPSTAT computerized database for discriminatory harassment on disability with malicious and sadistic intent has resulted in the encroachment of multiple suspended licenses within an eighteen month term, in conspiracy with the NYS to violate the peoples fifth and sixth amendment right to due process, the double jeopardy clause and fair trial guaranteed by the Constitution of the United States.    *Cordero v City of New York 282 F. Supp. 3d 549 *; 2017 U.S. Dist. LEXIS 171961 **; 2017 WL 4685544*

**[53]**  Marked difficulties in maintaining social functioning (establishing and maintaining social relationships, interpersonal interactions with primary partner, children or other family members, friends, neighbors, social skills, compliance with social norms, appropriate use of leisure time).  Plaintiff has not been in a relationship since 2008.  And as noted by the Dean at the New York Institute of Technology on the evaluation of April 10, 2006 "...has no friends..." ¶10    CompStat—or COMPSTAT has made it quite trouble-free for the NYPD to criminally stalk in violation of 42U.S.C.§1985(3) with local private bar and restaurant owners.  The City of New York is defaming plaintiff that '...he is a documented schizophrenic, don't talk to him and stay away! He is suicidal!' ¶56, 66, 85, 91, 96

**[54]**  Frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (ability to complete tasks commonly found in work settings or in structured activities that take place in home or school settings, individual`s may exhibit limitations in these areas when they repeatedly are unable to complete simple tasks within an established time period, make frequent errors in tasks, or require assistance in the completion of tasks).  Plaintiff is encountering discrimination and retaliation at the NYC buildings department, a place of employment, in violation of 42U.S.Code§2000a - Prohibition against discrimination or segregation in places of public accommodation.   Retaliation for his protected activity against the New York City Police Department as well as Pratt Institute and the U.S. Department of Education Office of Civil Rights. ¶37

**Conclusion**

**[55]** Plaintiff is submitting reconsideration to the Honorable Judge Brian Cogan's order dated June 26, 2019.  Should the court deny the plaintiff's reconsideration, plaintiff is kindly requesting that the court update the docket to include each said defendant as noted in the caption.  The court of appeals will need an updated docket to including all defendants as well as both James LeBow and Steve Bynres.

Date:
July 12, 2019

BY: Adil Khalil; Plaintiff *(Pro Se)*
   P.O. Box 0644
   Mastic Beach, N.Y. 11951-0644

**TO:** Honorary Brian M. Cogan
   100 Federal Plaza
   Central Islip, N.Y. 11722

cc: Hayley B. Dryer and James G. Ryan

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT C        N.Y.

X★    **JUL 12 2019**    ★

ADIL KHALIL,

                                    Plaintiff,

         -against-

PRATT INSTITUTE, CITY OF NEW YORK, STATE OF
NEW YORK, NYS TROOPER CHARLES KNAPP, UNITED
STATES OF AMERICA, FBI SPECIAL AGENT STEVE
BYRNES INDIVIDUALLY AND AS HIS OFFICIAL
COMPACITY, FBI SPECIAL AGENT ROBERT P. DUFFY
INDIVIDUALLY AND AS HIS OFFICIAL COMPACITY,
DAVID CHERKAS M.D. AS HIS PROFESSIONAL
COMPACITY, UMAR MANIA M.D. AS HIS PROFESSIONAL
COMPACITY, NYC HOSPITAL HEALTH AND HOSPITAL
CORPORATION, JAMES LEBOW ESQ. AS HIS PROFESSIONAL
COMPACITY, STATE UNIVERSITY OF NEW YORK (SUNY),
METROPOLITAIN TRANSPORTATION AUTHORITY DBA
LONG ISLAND RAILROAD

                                    Defendants,

X

LONG ISLAND OFFICE

Civil Action No.
16-CV-6731 (JFB)(SIL)

**AFFIRMATION OF
SERVICE**

I, Adil Khalil, declare under penalty of perjury that I served a copy of the following documents

(1) Motion for reconsideration dated July 12, 2019, and
(2) Order dated June 26, 2019

via United States Postal Service (USPS) mail on the defendant at the following address:

**Hayley B. Dryer and/or**
**James G. Ryan**
**Cullen and Dykman**
**100 Quentin Roosevelt Boulevard**
**Garden City, N.Y. 11530**

Date:
July 12, 2019

BY:    Adil Khalil; Plaintiff *(Pro Se)*
       P.O. Box 0644
       Mastic Beach, N.Y. 11951-0644

**RECEIVED**

JUL 1 2 2019

**EDNY PRO SE OFFICE**

cc: Honorary Brian M. Cogan, Hayley B. Dryer and James G. Ryan

Case 2:16-cv-06731-BMC-ST    Document 69    Filed 06/27/19    Page 1 of 4 PageID #: 2297

FILED ....C/M
IN CLERK'S .......
U.S. DISTRICT ~         ... Y.

★    JUL 12 2019    ⚡

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                           :

ADIL KHALIL,                 :
                           :

              Plaintiff,    :

                           :

         - against -       :    **ORDER**

                           :

PRATT INSTITUTE; CITY OF NEW YORK;  :    16-cv-6731 (BMC) (ST)
STATE OF NEW YORK; CHARLES F.      :
KNAPP; UNITED STATES OF AMERICA;   :
STEVE BYRNES; ROBERT DUFFY; M.D.   :
DAVID CHERKAS; M.D. UMAR MANIA;   :
NYC HOSPITAL HEALTH AND HOSPITAL  :
CORPORATION; ESQ. JAMES LEBOW;    :
SUNY; METROPOLITAN            :
TRANSPORTATION AUTHORITY,      :
                           :

            Defendants.   :
-------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff *pro se* commenced this action in November 2016 alleging violations of 42

U.S.C. § 1983, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and Title

VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, as well as certain state law claims.

After almost three years of litigation, plaintiff's case was subsequently reassigned to me, and

plaintiff has now filed his third amended complaint.

      By order dated March 3, 2019, Judge Bianco adopted Magistrate Judge Locke's Report

and Recommendation to dismiss plaintiff's second amended complaint.  That order granted

plaintiff leave to amend his complaint to do two things: (1) provide additional and requisite

information about his mental illness for the purpose of establishing that the statute of limitations

should be tolled under N.Y. C.P.L.R. § 208; and (2) provide additional and requisite information

about the conspiracy that he alleges occurred and violated his federal rights.  That order also

cautioned plaintiff that this would be his third and final opportunity to replead his claims consistent with the thorough and thoughtful explanations on what plaintiff would need to establish to adequately plead a claim for relief that Judge Locke provided plaintiff in his 23-page opinion.

Plaintiff's third amended complaint consists of 406 pages of allegations – much of which simply recite long portions of unrelated law and discuss facts dating back to his birth that are unrelated to any claim of discrimination he might have – and exhibits with no clear structure, organization, or cohesive thread.  As it relates to the order dismissing his second amended complaint, on page 45 of the complaint, plaintiff includes a section titled "Timeliness of the Complaint," which is what I will construe as his allegations in support of his § 208 argument. Here, plaintiff claims that he, "despite use of due diligence, could not or did not discover the injury of uvetic glaucoma until 01/13/18."  Besides the fact that this post-dates by more than two years the filing of his first complaint, therefore providing no support to his argument that the statute of limitations should be tolled to the filing of his complaint, it also fails to satisfy the high standard for tolling under § 208, as Judge Locke has already informed plaintiff.

On page 47 of the complaint, plaintiff again repeats that he "suffers from the autoimmune disease Sarcoidosis suffering from systematic inflammation, secondary uvetic glaucoma." This, again, does not satisfy the § 208 standard to justify tolling because it relates only to a physical impairment, and not a mental disorder rendering plaintiff unable to file a lawsuit, as Judge Locke also explained.

Finally, and most relevant for our purposes, plaintiff alleges that he was diagnosed on April 10, 2006 by the North Shore University Hospital with adjustment disorder with disturbance of conduct, personality disorder NOS with schizotypal and paranoid features, and educational

2

problems and problems related to social environment.  From the lone fact of these diagnoses,

plaintiff concludes that he has an overall inability to function, including in his "self care, daily

living, social functioning and the ability to complete tasks in a timely manner" and argues that

this qualifies him for relief under § 208.

Putting aside the fact that this does not comply with Judge Locke's explanation of how to

establish eligibility for tolling under § 208, plaintiff has also raised this identical allegation to me

in a separate complaint, which I dismissed in part on timeliness grounds.  See Khalil v. New

York Police Dep't et al., No. 17-cv-1729 (Apr. 15, 2019).  In my order dismissing his complaint

in that case, I explained to plaintiff that, for the purpose of being eligible for tolling under § 208,

"New York courts have defined 'insanity' narrowly, finding that it applies 'only to those

individuals who are unable to protect their legal rights because of an over-all inability to function

in society.'"  Perez v. New York City Police Dep't, No. 16CIV6401, 2017 WL 635493, at *2

(E.D.N.Y. Feb. 15, 2017).  The test also considers whether plaintiff has attempted to protect his

legal rights.  See id.

As was true in that case, the fact of plaintiff's history of mental illness does not meet the

requisite showing for "insanity" to toll the statute of limitations under CPLR § 208.  As I told

plaintiff then, although he might have "marked difficulties" (indeed, plaintiff used the exact

same explanation in both complaints) in everyday activities such as maintaining his personal

hygiene, health, and diet, that does not mean he suffers from a mental incapacity of the kind or

severity as those envisioned by § 208.

Under the *in forma pauperis* statute, I have an independent duty to dismiss a *pro se*

complaint "at any time" if I determine that the action fails to state a claim for relief.  28 U.S.C. §

1915(e)(2)(B).  Despite the many orders devoted to explaining to plaintiff the standards for filing

Case 2:16-cv-06731-BMC-ST    Document 69    Filed 06/27/19    Page 4 of 4 PageID #: 2300

an actionable lawsuit in federal court, his third amended complaint still fails to state a claim. Plaintiff has failed to establish that he is eligible for tolling under § 208, and therefore, his claims are untimely, as Judge Locke explained in the Report and Recommendation. Plaintiff's third amended complaint is therefore dismissed. Leave to amend again is denied as futile. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). As is evident from the several complaints that plaintiff has already filed in this case, no amount of repleading has or will cure the deficiencies identified in this and previous orders.

The Clerk of Court is directed to enter judgment dismissing the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
June 26, 2019

4